FILED
United States Court of Appeals
Tenth Circuit

June 27, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MICHAEL B. JORDAN, a/k/a M.J.,

    Defendant - Appellant.

No. 10-3165
(D.C. No. 5:06-CR-40160-03-JAR)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **MURPHY,** and **MATHESON**, Circuit Judges.

**I. INTRODUCTION**

    This case is before us on direct appeal after defendant Michael B. Jordan entered a plea agreement regarding a drug related charge and received a sentence of 210 months' imprisonment. Mr. Jordan presents three issues on appeal. First, he argues that he "was

---

[*]After examining the briefs and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

erroneously assessed a two level offense adjustment for obstruction of justice within the definition of Federal Sentencing Guideline § 3C1.1 for filing pleadings which had no legal effect but were deemed annoying by the trial court." Aplt. Opening Br. at 2. Second, he asserts that his counsel was ineffective in failing to "effectively challenge the enhancement for obstruction of justice under the Federal Sentencing Guideline 3C1.1." *Id.* at 10. Third, he argues that his guilty plea "was improvident and therefore involuntary because [he] did not admit each element of the crime." *Id.* at 14. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we affirm.

## II. BACKGROUND

Mr. Jordan, along with others, was charged with various drug-related crimes in a 61-count Second Superseding Indictment. Count 1 charged Mr. Jordan and others with conspiring "to possess with the intent to distribute and dispense 5 kilograms or more of a mixture of substance containing a detectable amount of cocaine" in violation of 21 U.S.C. § 846, with reference to 21 U.S.C. § 841(a)(1) and (b)(1)(A), and 18 U.S.C. § 2. ROA, Vol. 1 at 46.

Mr. Jordan entered a plea agreement in which he pleaded guilty to Count 1. The remaining charges against him were dismissed. The stipulated facts section of the plea agreement said that Mr. Jordan had conspired "to possess with the intent to distribute and dispense 3.5 to 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine." *Id.* at 133. This language did not match the indictment, which stated that "5 kilograms or more" of drugs were at issue. *Id.* at 46.

At the plea hearing, Mr. Jordan only agreed that he had conspired to possess with intent to distribute a quantity between 3.5 to 5 kilograms, not 5 kilograms or more. The district court reviewed the possible sentence with the defendant as ranging between a mandatory minimum of ten years and a maximum of life in prison. The court also recounted that the parties' agreement set the base offense level for Mr. Jordan at 30 and that this number was only a starting point from which further calculations could be made. After a thorough discussion, the district court accepted Mr. Jordan's plea and found it to be "knowingly and voluntarily made and further . . . that [it is] supported by an independent basis in fact containing each of the essential elements of the offense." *Id.,* Vol. 3 at 224.

At the sentencing hearing, Mr. Jordan's counsel directed the court's attention to the discrepancy between "5 kilograms or more" in the indictment and "3.5 and 5 kilograms or more" in the plea agreement. Mr. Jordan's counsel insisted that the "or more" language in the plea agreement was confusing and should be ignored. The district court agreed that Mr. Jordan had only pleaded to "3.5 to 5" and "not an amount in excess of 5," but found this not to be significant because the parties had agreed to a base offense level of 30. *Id.* at 267-68.

Mr. Jordan also objected at this hearing to the presentence report's recommended 2-level adjustment for "harassing and obstructive behavior during the prosecution of the instant case" pursuant to U.S.S.G. § 3C1.1. *Id.,* Vol. 2 at 151. The court summarized Mr. Jordan's obstructive behavior as follows:

[D]uring the course of this case the defendant sent a number of letters to Assistant U.S. Attorney Greg Hough threatening to seize Mr. Hough's assets via multiple proof of claim documents.

The Court considered this conduct throughout the case in a number of hearings that were on motions and hearings concerning these filings and repeatedly told Mr. Jordan to stop sending this correspondence to Mr. Hough. [The Court told Mr. Jordan] that the defendant was represented and that he should not have direct contact with the prosecutor, and that the prosecutor . . . could not contact or communicate with him directly.

. . . [T]he defendant continued to send this type of correspondence to Mr. Hough for some period of time but did stop at some point. But before he stopped he was . . . sending correspondence to Mr. Hough . . . that [was] in the guise of legal documents that threatened Mr. Hough with a number of penalties and punishments and adverse consequences, saying that Mr. Jordan was seeking a proof of claim against Mr. Hough and charging Mr. Hough with the responsibility to file proofs of claim on a number of items and types of information, and indicating that should Mr. Hough fail to satisfy or file these proofs of claim, the correspondence charged that Mr. Hough would be guilty of injuring Mr. Jordan and committing false arrest, misapplication of statute and malicious prosecution, conspiracy, fraud, torts, violations of constitutional rights, et cetera, and indicating that a judgment would be taken against him.

So it was this type of activity that underlies the application of that particular guideline. It was postindictment, after Mr. Hough was assigned and working as the prosecutor on this case, and Mr. Jordan did continue to engage in this activity for a period of time even after the Court directed him not to. So on this basis the Court finds that this particular enhancement is appropriate under Guideline 3C1.1. It is an act consistent with harassing and obstructive behavior as contemplated in that guideline. So I will overrule and deny this objection.

*Id.,* Vol. 3 at 271-73. Mr. Jordan's counsel argued that the filings were merely the result of Mr. Jordan's representing himself without any legal expertise and carried no obstructionist intentions.[1]

The presentence report responded to Mr. Jordan's objection regarding the obstruction enhancement, stating in part that the acts at issue could not be "fairly

---

[1] Mr. Jordan eventually obtained legal counsel before entering the plea agreement.

characterized as simply poor or misguided attempt[s] at self-representation." *Id.*, Vol. 2 at 163. Rather, the "acts were obstructive and threatening" and meant as a "retaliatory measure" aimed at the personal property of the prosecutor in the case. *Id.* "This is not in any way consistent with defending oneself against criminal charges—it is an act consistent with harassing and obstructive behavior anticipated by U.S.S.G. § 3C1.1." *Id.*

Mr. Jordan attempted to withdraw his guilty plea before a final sentence was pronounced. He insisted that by pleading to a conspiracy to possess 3.5 to 5 kilograms of drugs (rather than 5 kilograms or more), he thought he would not be sentenced to more than 11 years in prison. The court denied his request to withdraw the plea, finding that Mr. Jordan's plea

> was knowingly and voluntarily made . . . with full information and . . . close assistance of counsel who gave the defendant good and competent and experienced advice and counsel and negotiated significantly for him and helped him secure a favorable plea agreement considering what he was facing if this case went to trial.

*Id.,* Vol. 3 at 390. The district court sentenced Mr. Jordan to 210 months' imprisonment and five years' supervised release. He was also ordered to pay a $100 special assessment.

Mr. Jordan filed a timely direct appeal to this court.

### III. DISCUSSION

**A.** *Applying the Obstruction-of-Justice Adjustment Was Not Error*

"When considering a challenge to an application of the Sentencing Guidelines, we review a district court's legal interpretation of the Guidelines de novo and its factual

findings for clear error." *United States v. Smith,* 534 F.3d 1211, 1226 (10th Cir. 2008), *cert. denied,* 129 S. Ct. 654 (2008).

The facts are not in dispute. Mr. Jordan sent various letters to the attorney assigned to prosecute this case. As the district court explained, these letters, "in the guise of legal documents," threatened to seize the attorney's assets and exact a "number of penalties[,] . . . punishments and adverse consequences." These letters also made various unfounded charges regarding the prosecutor's responsibility to file proofs of claim. ROA, Vol. 3 at 271-72. Mr. Jordan continued to send such correspondence even after the district court instructed him to desist.

These actions were the basis for the obstruction-of-justice sentencing enhancement under U.S.S.G. § 3C1.1, which states:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by **2** levels.

Mr. Jordan argues that the correspondence he sent does not qualify as an obstruction of justice under this guideline. He states that "[a]n extensive search of cases interpreting [§] 3.C1.1 did not disclose a case where sham annoying pleadings filed to retaliate against a prosecutor[] were held to be obstructive conduct." Aplt. Opening Br. at 13.

In response, the government argues that the absence of on-point authority does not indicate that the district court erred in its application of the guideline. Furthermore, the guideline language and associated commentary are broad enough to incorporate Mr.

Jordan's actions as an obstruction of justice.

We agree with the government's position and the analysis of both the district court and the presentence report. Commentary[2] to this guideline explains that

> [o]bstructive conduct can vary widely in nature, degree of planning, and seriousness. . . . Although the conduct to which this adjustment applies is not subject to precise definition, comparison of the examples set forth in Application Notes 4 and 5 should assist the court in determining whether application of this adjustment is warranted in a particular case.

U.S.S.G. § 3C1.1 cmt. n.3. Although none of the examples listed in Notes 4 and 5 exactly match the situation we face here, the facts in this case are more similar to examples of covered conduct in Note 4 than the uncovered examples of Note 5. *Compare e.g., id.* at n.4(A) ("threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness or juror, directly or indirectly, or attempting to do so"), *with id.* at n.5 ("making false statements, not under oath, to law enforcement officers").

As the presentence report observed, Mr. Jordan's "acts were obstructive and threatening" and meant as a "retaliatory measure" aimed at the personal property of the prosecutor in the case. ROA, Vol. 2 at 163. "This is not in any way consistent with defending oneself against criminal charges—it is an act consistent with harassing and obstructive behavior anticipated by U.S.S.G. § 3C1.1." *Id.* We therefore affirm the

---

[2] "Commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *United States v. Torres-Ruiz,* 387 F.3d 1179, 1181 (10th Cir. 2004) (quotations omitted).

district court's decision that Mr. Jordan's acts constituted an obstruction of justice under U.S.S.G. § 3C1.1.

## B. *We Need Not Reach the Ineffective Assistance of Counsel Claim*

Mr. Jordan argues ineffective assistance of counsel because his attorneys should have supported their objections to the obstruction-of-justice sentencing enhancement under U.S.S.G. § 3C1.1 with persuasive case law and authorities. His argument is premised on the assumption that his actions did not constitute an obstruction of justice. Because we have shown that assumption is false, we need not reach the ineffective assistance issue. We also note that "[i]neffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal. Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed." *United States v. Galloway,* 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc).

## C. *Mr. Jordan's Plea Is Valid*

"A district court has a duty to ensure that a defendant's guilty plea is truly voluntary. Whether the defendant's plea was knowing, intelligent, and voluntary is a question of law we review de novo." *United States v. Asch,* 207 F.3d 1238, 1242 (10th Cir. 2000) (citations and quotations omitted).[3]

Mr. Jordan argues as follows: His guilty plea was involuntary and invalid because

---

[3] The government has argued that we should use a plain error analysis. But, as demonstrated in the background section of this order and judgment, Mr. Jordan sufficiently addressed this issue below to merit de novo review.

he did not admit to all the elements of the crime charged. Specifically, he did not admit to the quantity of drugs outlined under Count 1 of the indictment—"5 kilograms or more." ROA, Vol. 1 at 46. Instead, he admitted to some undefined amount between 3.5 and 5 kilograms.

Mr. Jordan was charged under 21 U.S.C. § 846, with reference to 21 U.S.C. § 841(a)(1) and (b)(1)(A), and 18 U.S.C. § 2. *See* ROA, Vol. 1 at 46. Section 846 provides that "any person who . . . conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the . . . conspiracy." The offense that was the object of the conspiracy was a violation of § 841(a)(1), which prohibits possession of a controlled substance with intent to distribute. Subsection (b) of 21 U.S.C. § 841 outlines applicable penalties for violations of § 841(a). It provides three different statutory maximum penalties depending on the quantity of drugs at issue. For 5 kilograms or more of cocaine mixture, the maximum is a life sentence, 21 U.S.C. § 841(b)(1)(A)(ii); for 500 grams or more, the maximum is 40 years, *id.* (b)(1)(B)(ii); and for amounts less than 500 grams, the maximum is 20 years, *id.* (b)(1)(C).

Mr. Jordan's argument regarding the discrepancy between the drug quantities in the indictment and plea agreement fails because "[d]rug quantity is an essential element only 'if the quantity triggers a sentence beyond the maximum allowed for violation of the base § 841(a)(1) offense.'" *United States v. Caldwell,* 589 F.3d 1323, 1333 (10th Cir. 2009) (quoting *United States v. Montgomery,* 468 F.3d 715, 719 (10th Cir. 2006), *cert.*

*denied,* 549 U.S. 1259 (2007)).   Mr. Jordan's sentence of 210 months' imprisonment was below the base 21 U.S.C. § 841(a)(1) statutory maximum of 20 years.  Under these circumstances, the quantity was not an essential element of the crime.  We therefore affirm the district court's decision that the plea is valid.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge