**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 19, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

REGINALD A. LANCASTER,

    Defendant - Appellant.

No. 11-6097
(D.C. No. 5:10-CR-00072-D-1)
(W.D. Okla.)

**ORDER AND JUDGMENT**<sup>*</sup>

Before **LUCERO**, **EBEL,** and **MATHESON**, Circuit Judges.

In this direct criminal appeal, Defendant-Appellant Reginald Lancaster challenges

his four drug-trafficking convictions and the sentence imposed for those convictions.

Having jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291, we affirm.

**I. BACKGROUND**

Viewed in the light most favorable to the United States, see United States v. Diaz,

679 F.3d 1183, 1187 (10th Cir. 2012), the evidence presented at trial established the

following: Over the course of one year, police found Lancaster in possession of illegal

---

    * This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

drugs on three occasions. First, on August 15, 2008, officers conducting a traffic stop found Lancaster with 4.5 grams of cocaine base ("crack"). Second, on November 3, 2008, Lancaster, loitering near a vacant house, had twenty-eight grams (one ounce) of marijuana, $237 in small bills and two cell phones. And third, on July 17, 2009, after a police officer saw what appeared to be a hand-to-hand drug transaction between Lancaster and another person, officers found Lancaster with 77.22 grams of marijuana which he admitted he intended to distribute.

In addition to finding Lancaster in possession of drugs on these three occasions, police, acting pursuant to an authorized wiretap of drug dealer Gregory Boone, recorded a July 3, 2009, call between Boone and Lancaster. During that call, Lancaster attempted to buy marijuana from Boone.

Based on these incidents, as well as additional information Boone provided against Lancaster, the United States indicted Lancaster on eleven drug-trafficking charges involving crack and marijuana. A jury convicted him of four of those charges: 1) possessing, with the intent to distribute, five grams or more of crack on August 15, 2008 (Count 1); 2) possessing marijuana, with the intent to distribute, on November 3, 2008 (Count 3); 3) using a telephone, on July 3, 2009, to attempt to buy marijuana (Count 10); and 4) possessing marijuana, with the intent to distribute, on July 17, 2009 (Count 11). The district court sentenced Lancaster to 151 months in prison on Count 1, and sixty months in prison on each of Counts 3, 10, and 11, all to run concurrently. On appeal, Lancaster challenges all four convictions and his sentence.

2

## II.  LANCASTER'S CONVICTIONS

### A.  There was sufficient evidence to support Lancaster's conviction on Count 1

Lancaster first argues that there was insufficient evidence to convict him on Count 1.  We review this argument de novo.  See Diaz, 679 F.3d at 1187.

Count 1 charged Lancaster with possessing with the intent to distribute "5 grams or more of a mixture or substance containing a detectable amount of cocaine base (crack)" on August 15, 2008.  (R. v. 1 at 13.)  The jury convicted Lancaster of this charge, and specifically found that the offense involved "5 grams or more" of crack.  (Id. at 117.)  On appeal, Lancaster argues that 1) the evidence at trial established that he possessed only 4.5 grams of crack on that day; and 2) because the amount of crack charged in the indictment was an element of the offense which the United States failed to prove, the district court should have granted him a judgment of acquittal on Count 1.

We assume, without deciding, that there was insufficient evidence to support the jury's finding that Lancaster possessed five grams of crack on August 15.[1]  Nonetheless, because we conclude the amount of drugs charged in the indictment was not an essential element of the offense charged in Count 1, we affirm Lancaster's conviction on that count.

---

[1] The evidence at trial established that, when Lancaster ran from police, he threw away a bag containing 4.21 grams of crack.  And at the county jail, after his apprehension and arrest, Lancaster had an additional .29 grams of crack in his pockets, for a total of 4.5 grams of crack.  Because we assume here that Lancaster possessed only these 4.5 grams of crack on August 15, 2008, we need not address the Government's argument that there was other evidence presented at trial from which a jury could have inferred that Lancaster possessed at least another .5 grams of crack earlier that same day.

Count 1 charged Lancaster with possessing crack with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1). Section 841(a)(1) provides, in pertinent part, that "it shall be unlawful for any person knowingly or intentionally . . . to . . . possess with the intent to . . . distribute . . . a controlled substance." The jury convicted Lancaster of that offense, finding as an initial matter that the offense involved at least a measurable amount of crack. There was sufficient evidence to support that conviction involving at least a measurable amount of crack, and Lancaster does not argue to the contrary.

Lancaster's conviction for possessing crack with the intent to distribute was subject to a three-tiered statutory sentencing scheme. See 21 U.S.C. §841(b). At the time Lancaster committed this offense, that sentencing scheme provided the following maximum penalties for a § 841(a) crack offense: an offense involving an indeterminate amount of crack was punishable by not more than twenty years in prison, id. § 841(b)(1)(C) (2009); an offense involving five grams or more of crack was punishable by not more than forty years in prison, see id. § 841(b)(1)(B)(iii) (2009); and an offense involving fifty grams or more of crack was punishable by up to life in prison, see id. § 841(b)(1)(A)(iii) (2009).[2]

---

[2] After Lancaster's offense, Congress, through the Fair Sentencing Act, revised 21 U.S.C. § 841(b)(1)(A)(iii) and (B)(iii), effective August 3, 2010, to provide for a sentence of between five and forty years in prison for an offense involving twenty-eight or more grams of crack, and a sentence of between ten years to life in prison for an offense involving 280 grams of crack. See Dorsey v. United States, 132 S. Ct. 2321, 2329 (2012). Those revisions apply retroactively to someone in Lancaster's position, who committed his offense before August 3, 2010, but was sentenced after that date. See id. at 2326 (addressing mandatory minimum sentences provided in § 841(b)(1)(A) and (B)).

"Drug quantity is an essential element [of a § 841(a) offense] only if the quantity triggers a sentence beyond the maximum allowed for the violation of the base § 841(a)(1) offense" involving only an indeterminate drug quantity under § 841(b)(1)(C). United States v. Caldwell, 589 F.3d 1323, 1333 (10th Cir. 2009) (emphasis added). "The corollary of this statement is that the quantity of drugs involved in a violation of § 841 is not an essential element of the offense if the district court imposes a sentence that does not exceed the maximum set forth in § 841(b)(1)(C), which does not require any minimum quantity as a predicate for sentencing." United States v. Walters, 163 F. App'x 674, 680 (10th Cir. 2006) (unpublished).

Here, because the district court imposed a 151-month sentence, which fell within the twenty-year statutory maximum sentence available for a base § 841(a) offense involving an indeterminate amount of crack, drug quantity was not an essential element of Lancaster's offense. Therefore, the Government's failure to prove drug quantity to the jury beyond a reasonable doubt is of no moment in this case. See United States v. Wilson, 244 F.3d 1208, 1214-16 (10th Cir. 2001); see also United States v. Jordan, 428 F. App'x 812, 817 (10th Cir. 2011) (unpublished) (upholding 210-month sentence where indictment charged offense under § 841(a)(1) and (b)(1)(A) involving five or more kilograms of a mixture containing cocaine, but the defendant, in his plea agreement,

---

Those revisions, however, do not affect our discussion here because, assuming the Government failed to prove that Lancaster's § 841(a) offense involved five grams or more of crack, he would not have been subject to an enhanced sentence under § 841(b)(1)(A) or (B), either before or after the Fair Sentencing Act's enactment.

5

admitted to conduct involving only 3.5 to five kilograms of cocaine, where the sentence imposed did not exceed the maximum twenty-year sentence available under § 841(b)(1)(C) for an offense involving an indeterminate amount of cocaine).

Further, the jury's finding that Lancaster was guilty, under Count 1, of possessing a measurable amount of crack on August 15, 2008, with the intent to distribute it was not affected by the Government charging Lancaster in the indictment with a § 841(a) offense involving five grams or more of crack, and the jury finding (we are assuming improperly) that Lancaster's offense involved five grams or more of crack. See Caldwell, 589 F.3d at 1333. The trial court instructed the jurors, without objection, that to convict Lancaster on Count 1, they had first to determine whether Lancaster possessed a measurable amount of crack on August 15, 2008, with the intent to distribute it. Only after convicting Lancaster of that offense did the jury then decide whether or not the offense involved five grams or more of crack.

We, therefore, uphold Lancaster's conviction on Count 1.

**B.  Lancaster waived his challenge to the search underlying Count 11**

Lancaster next challenges his conviction on Count 11, which charged him with possessing 77.22 grams of marijuana on July 17, 2009. Lancaster contends that, because he never consented to the pat-down search that resulted in police finding the marijuana, that search was unconstitutional and the trial court should have suppressed the marijuana.

Lancaster, however, never moved prior to trial to suppress this evidence, even though Fed. R. Crim. P. 12(b)(3)(C) requires a defendant to make a motion to suppress

6

evidence before trial. Failure to do so waives the issue, barring review. <u>See</u> Rule 12(e); <u>United States v. Burke</u>, 633 F.3d 984, 987-89 (10th Cir.), <u>cert. denied</u>, 131 S. Ct. 2130 (2011).

Lancaster acknowledged that his attorney did not challenge the constitutionality of this search before trial, but he asserts that defense counsel objected to the search during trial, which still preserved the issue for appellate review. Lancaster's attorney, however, never specifically objected to the constitutionality of this search at trial, either.

Even if counsel had specifically objected to the validity of the search during trial, however, that would still be insufficient to preserve this issue for appellate review. <u>See</u> <u>Burke</u>, 633 F.3d at 988 & n.1 (rejecting prior Tenth Circuit cases permitting judicial review when a defendant failed to challenge a search prior to trial).

Rule 12(e) does provides that, "[f]or good cause, the court may grant relief from the waiver," but that is only "a single narrow exception to the waiver rule," <u>Burke</u>, 633 F.3d at 988 (internal quotation marks omitted). When, as here, a defendant raises a suppression issue for the first time on appeal, he can attempt to satisfy Rule 12(e) by showing "good cause" why he could not have raised the matter before the district court. <u>See</u> <u>Burke</u>, 633 F.3d at 988. But Lancaster never attempts to make such a showing, asserting instead that "[t]he reason why no motion to suppress was filed is unknown. It could have been that discovery materials had not described the situation adequately, or it could have been that Appellant's trial counsel negligently failed to file an appropriate pleading." (Aplt. Reply Br. at 19.) Lancaster has, therefore, waived his challenge to the

7

constitutionality of the pat-down search occurring on July 17, 2009.  See Burke, 633 F.3d at 988.

**C.  The district court did not err in admitting evidence referring to gangs and Lancaster's gang membership**

Next, Lancaster asserts that all four of his convictions should be reversed because the district court erred in permitting the prosecution to elicit testimony referring to Lancaster's gang membership.  Lancaster contends the probative value of this gang evidence was outweighed by its unfair prejudice to him.  See Fed. R. Evid. 403.  But we conclude the trial court did not abuse its discretion in its treatment of this evidence.  See United States v. Ford, 613 F.3d 1263, 1267 (10th Cir. 2010) (reviewing evidentiary ruling for an abuse of discretion).

There were three categories of gang-related evidence presented at trial.  First, two Government witnesses, police Sergeant Brian Cook and convicted drug dealer Gregory Boone, testified that Lancaster belonged to a gang.  The trial court originally permitted this testimony under Fed. R. Evid. 404(b), based upon the Government's assertion that this evidence was relevant to Lancaster's identity, motive, intent, lack of mistake or accident, plan, and preparation.  At the conclusion of the Government's case, however, the district court sua sponte ruled that the United States had failed to show that this testimony that Lancaster was in a gang was relevant for these Rule 404(b) purposes.  The district court, therefore, instructed jurors to disregard Cook's and Boone's testimony that Lancaster was in a gang.  We presume that jurors followed the court's instructions.  See

8

United States v. Chavez, 481 F.3d 1274, 1278 (10th Cir. 2007).

The second category of evidence that Lancaster was in a gang was his own testimony. The trial court, over Lancaster's objection, permitted the Government, on cross-examination, to ask him about his offer to cooperate with police in exchange for lenient treatment. During that cross-examination, Lancaster denied that he was a Pitts Park Hoover Crip and stated that, in offering to cooperate with authorities, Lancaster told police that he did not want to provide any information about his friend, meaning Gregory Boone, but that he would "help" officers "with anything else." (R. v. 4 trial tr. at 430-31.) The district court permitted this cross-examination after ruling the defense had opened the door to it by eliciting Lancaster's direct testimony about his willingness to cooperate with police. At the conclusion of Lancaster's testimony, the court, at defense counsel's request, gave the jury a limiting instruction.[3] And the court included a similar

---

[3] The court instructed jurors as follows:

> Members of the jury, you've heard some references in testimony regarding Mr. Lancaster's purported gang affiliation or knowledge of other purported gang members and their activities. You may consider that evidence only as it bears upon the – Mr. Lancaster's credibility as a witness. And you may also consider it as it bears on Mr. Lancaster's intent and knowledge in connection with the charged offenses. You may not consider that evidence for any other purpose than those.

> The fact that the – that Mr. Lancaster may have had knowledge of other gang members or may have had some purported gang affiliation does not necessarily mean that he has committed any of the offenses charged in this case.

9

limiting instruction in the final instructions given jurors before their deliberations.

The third category of gang-related evidence admitted at trial included the following: Three Oklahoma City police officers testified that at the time they encountered Lancaster, they were working as part of an anti-gang project funded by a federal grant. A fourth officer testified that he had attended several gang investigators' conferences. Still another officer testified that there was a lot of gang and drug activity in the area where he encountered Lancaster. The FBI case agent also testified that he worked with "gang enforcement units." (Id. at 105-06, 126-27.)

We conclude the district court did not abuse its discretion in its treatment of this evidence, considered separately or cumulatively. Even if the district court erred in its treatment of some of this evidence, which we conclude it did not, any error would have been harmless. See Caldwell, 589 F.3d at 1334. The evidence of Lancaster's guilt on each of the four charges on which the jury convicted him was overwhelming. Further, we could not conclude that the gang-related evidence improperly swayed the jury to convict Lancaster in light of the fact that the jury acquitted him of seven of the eleven charged offenses. Cf. Bailey v. United States, 410 F.2d 1209, 1212, 1215 (10th Cir. 1969) (noting jury's decision to acquit two of five defendants showed jury remained impartial).

---

This instruction does not alter the instruction I gave you yesterday when I struck portions of the testimony of Sergeant Cook or Mr. Boone.

(R. v. 4 trial tr. at 443.)

10

### III. LANCASTER'S SENTENCE

Lastly, Lancaster challenges his 151-month sentence, arguing the district court clearly erred in finding that he was responsible for distributing nine ounces (252 grams) of crack. The district court then used that drug quantity to calculate Lancaster's advisory sentencing guidelines range.[4]

For sentencing purposes, the Government must prove drug quantity by a preponderance of the evidence. United States v. Foy, 641 F.3d 455, 468 (10th Cir.), cert. denied, 132 S. Ct. 467 (2011). We review a sentencing court's factual findings regarding drug quantities for clear error; we will reverse "only if the district court's finding was without factual support in the record or we are left with the definite and firm conviction that a mistake has been made." Id.

Where, as here, at least for the most part, "the actual drugs underlying a drug quantity determination are not seized, the trial court may rely upon an estimate to establish the defendant's guideline offense level so long as the information relied upon has some basis of support in the facts of the particular case and bears sufficient indicia of reliability." Id. (internal quotation marks omitted). "'When choosing between a number of plausible estimates of drug quantity, none of which is more likely than not the correct quantity, a court must err on the side of caution.'" United States v. Higgins, 282 F.3d

---

[4] Although Lancaster's relevant conduct, for sentencing purpose, also involved marijuana, the parties agree that the amount of marijuana with which Lancaster was involved had a negligible impact on his sentence, and it is the amount of crack for which he is responsible that drove the determination of his offense level and the resulting advisory guideline range.

11

1261, 1280 (10th Cir. 2002) (quoting United States v. Richards, 27 F.3d 465, 469 (10th Cir. 1994)).

In this case, the presentence report determined that, for sentencing purposes, Lancaster was responsible for distributing 61.75 ounces of crack. This was based on a statement Lancaster made to police in July 2009 indicating that he bought at least a half ounce of crack every other day from June 2008 through July 2009. That amount, 61.75 ounces of crack, resulted in an offense level of 34, which produced an advisory guideline range of 188 to 235 months. Lancaster objected to this amount, and at sentencing, the district court found, instead, that it was "very probable" that Lancaster was responsible for distributing "somewhere between" nine and 61.75 ounces of crack. (R. v.4 sentencing tr. at 142-43). "[E]rring on the side of caution," however, the sentencing court ultimately found Lancaster responsible for nine ounces of crack. (Id. at 143-44.) That finding reduced Lancaster's offense level to 30, and his advisory guideline range to 121 to 151 months in prison. The district court then imposed a sentence at the top of that range, 151 months, for Count 1, and sixty months each for Counts 3, 10 and 11, all to run concurrently.

The Government presented sufficient evidence to support the trial court's finding, by a preponderance, that Lancaster's relevant conduct involved nine ounces of crack. In particular, Gregory Boone testified at trial that he sold Lancaster a total of "at least" 4.5 to nine ounces of crack. (Id. at 173.)

Lancaster argues that the district court should not have relied on Boone's

12

testimony because the jury clearly found his testimony to be incredible, in light of the fact that the jury acquitted Lancaster on the seven counts that were based solely on Boone's uncorroborated testimony. But the sentencing court is not bound by the jury's implicit credibility determinations. See United States v. Rhynes, 196 F.3d 207, 240 (4th Cir. 1999), opinion vacated in part on other grounds, 218 F.3d 310 (4th Cir. 2000). And the district court here expressly noted at sentencing that it did not "necessarily share th[e] [jury's] apparent credibility determination" regarding Boone's trial testimony. (R. v.4 sentencing tr. at 142.)

In any event, there was additional evidence that corroborated Boone's testimony and that suggests that the trial court's finding that Lancaster was responsible for nine ounces of crack was a conservative estimate. Boone further testified at trial that he believed that Lancaster had other, better crack suppliers, and that Lancaster would buy crack from Boone only when Lancaster was having trouble getting it from his other suppliers. And two Oklahoma City police officers testified that Lancaster himself told them that he bought drugs from several suppliers other than Boone. Moreover, according to these officers, Lancaster admitted to buying a half to a full ounce every other day for approximately one year. And at sentencing, Sylvia Moore, who had been detained in the same facility with Lancaster after his arrest, testified that Lancaster had a half ounce of crack with him in the facility, which he told Moore he was still selling to his customers. This evidence prompted the district court to note that it was "very probable" that Lancaster was responsible for distributing "somewhere between" nine and 61.75 ounces

13

of crack. (Id. at 142-43). Thus the district court, in finding that Lancaster was responsible for nine ounces of crack, properly erred on the side of caution.

On appeal, Lancaster asserts numerous reasons why the sentencing court should not have believed either Boone's trial testimony or his own. But we will defer to the district court's credibility determinations. See United States v. Keeling, 235 F.3d 533, 535 (10th Cir. 2000). We, therefore, conclude the district court's factual finding that, for sentencing purposes, Lancaster was responsible for distributing nine ounces of crack, was not clearly erroneous and, thus, uphold Lancaster's 151-month sentence.[5]

## III. CONCLUSION

For the foregoing reasons, we AFFIRM Lancaster's four convictions and his 151-month sentence.

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge

---

[5] In sentencing Lancaster, the district court deemed him subject to a mandatory minimum five-year sentence under 21 U.S.C. § 841(b)(1)(B), based on the jury's finding that Count 1 involved five grams or more of crack. But we have assumed, for purposes of this appeal, that the Government failed to prove that Count 1 involved that much crack. Further, the Supreme Court has held that the Fair Sentencing Act of 2010 applies retroactively to defendants like Lancaster. See Dorsey, 132 S. Ct. at 2326. That Act requires proof that the § 841(a) offense involved, not five, but twenty-eight grams or more of crack. See id. at 2329. For both of those reasons, then, Lancaster should not have been subjected to a mandatory minimum five-year sentence. Nonetheless, any error the sentencing court made in deeming a five-year mandatory minimum sentence to apply to Lancaster did not affect his sentence, because the district court imposed a 151-month sentence after correctly applying the sentencing guidelines.

14