**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

          Plaintiff - Appellee,

v.

URIEL ALFONSO YANEZ-
RODRIGUEZ,

          Defendant – Appellant.

No. 14-1459
(D.C. No. 1: 14-CR-00201-JLK-1)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **GORSUCH**, **O'BRIEN**, and **BACHARACH**, Circuit Judges.

Uriel Alfonso Yanez-Rodriguez, a citizen of Mexico, has been repeatedly

removed from the United States. Each time he reentered and when caught made

damning admissions to immigration authorities. His most recent reentry (2014)

triggered an indictment for illegal reentry of a removed alien in violation of 8

---

[*] The parties have waived oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). This case is submitted for decision on the briefs.

This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1. It is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). *Id.*

U.S.C. § 1326(a). Abundant evidence about his removal in 2009 and this reentry was presented to the jury without objection from Yanez-Rodriguez. But over his objection evidence about his prior removals and reentries (2005 and 2006) was admitted under Fed. R. Evid. P. 404(b). The issue we confront is narrow: whether the probative value of that evidence was substantially outweighed by its potential for unfair prejudice. Fed. R. Evid. P. 403. The issue is close, but we need not decide it; any error in admitting the evidence was harmless.

## I. Background

The record is not clear as to when, but all agree that Yanez-Rodriguez first entered the United States as a young child. Serious immigration problems visited him in November 2005 when an Immigration Judge ordered him removed from the United States to Mexico; he was 22 at the time. He did not contest the removal or seek to appeal from the order. He reentered the next day and remained in the United States until he was discovered in October 2006. At that time the 2005 order of removal was reinstated and he was immediately returned to Mexico. But the revolving door was well oiled; he again returned to the United States, this time two weeks later. He remained under the radar until October 2007, when he was again discovered in the United States. The government finally charged him with illegal reentry of a removed alien in violation of 8 U.S.C. § 1326(a). He pled guilty in May 2008 and was sentenced to 24 months imprisonment. Upon his release from prison in December 2009, the 2005 order of removal was again reinstated and he was again removed to Mexico. This time he stayed away for

several years. But, as usual, he returned to the United States and eventually was caught (in May 2014). Needless to say, "this ain't [Yanez-Rodriguez's] first rodeo."[1] To his credit though, each time he was found in and removed from the United States he admitted to (1) being a citizen of Mexico, (2) having been previously removed, and (3) reentering the United States without permission to do so.

After being found here in May 2014, he was again indicted for reentry of a removed alien. The indictment was based on the December 2009 removal. Prior to trial, the government provided notice of its intent to offer "crimes, wrongs, or other acts" evidence under Rule 404(b). It consisted of evidence about the 2005 and 2006 removals, as well as his subsequent reentries. The government claimed, *inter alia*, the evidence was admissible to show "knowledge, identity, alienage, absence of mistake, and lack of accident." (R. Vol. I at 55.)

Yanez-Rodriguez offered no objection to the admission of evidence concerning his 2009 removal but did object to allowing any evidence of his prior removals and reentries, claiming the government's true purpose was to show his propensity to commit illegal reentry, something not sanctioned by Rule 404(b). He also argued its probative value was substantially outweighed by its prejudicial effect, particularly because of the similarity between the prior acts and the charged offense.

---

[1] Vern Gosdin, American country singer (July 1990).

At a hearing, the government expounded on its Rule 404(b) argument, saying the prior removals and reentries were admissible to prove Yanez-Rodriguez was (1) an alien who (2) intentionally entered the United States; both are elements of the charged crime. The judge admitted the evidence and later instructed the jury: "[The government] does not have to prove that the defendant intended to violate the law or that [he] knew he could not legally be within the United States." (R. Vol. IV at 59-60, 398.) He also told the jury (twice) that it could consider the other acts evidence "only as it bears on the defendant's motive, intent, knowledge, absence of mistake or accident and for no other purpose. Of course, the fact that the defendant may have previously committed an act similar to the one charged in this case does not mean that the defendant necessarily committed the act charged in this case." (R. Vol. IV at 58.)

The jury found Yanez-Rodriguez guilty. He was subsequently sentenced to 48 months imprisonment.

## II. Discussion

The issue here presented is steeped in history:

Courts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt . . . . The State may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge.

*Michelson v. United States,* 335 U.S. 469, 475-76 (1948).

"We review a decision to admit evidence under Fed. R. Evid. 404(b) for abuse of discretion." *United States v. Roberts*, 185 F.3d 1125, 1141 (10th Cir. 1999). "Rule 404(b) is considered to be an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove *only* criminal disposition." *United States v. Burgess,* 576 F.3d 1078, 1098 (10th Cir. 2009) (quotations omitted). "[It] sets forth both the prohibited and (in non-exhaustive terms) the permitted uses for evidence of 'crimes, wrongs, or other acts.'" *United States v. Watson*, 766 F.3d 1219, 1235 (10th Cir. 2014) (quoting Rule 404(b)). We reiterate. The evidence cannot be used if its only purpose is to expose "a person's character in order to show that on a particular occasion the person acted in accordance with the character." Rule 404(b)(1). But it may be admitted as proof of such things as "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Rule 404(b)(2).

To that end, this circuit applies a four-part test. Our test requires: (1) the evidence be offered for a proper purpose; (2) it must be relevant; (3) the trial court must determine (under Rule 403) the probative value of the evidence not to be substantially outweighed by its potential for unfair prejudice; and (4) upon request the judge must give the jury proper limiting instructions. *United States v. Hill*, 60 F.3d 672, 676 (10th Cir. 1995).

With that test in mind, Yanez-Rodriguez is adamant: the evidence about his prior removals and reentries, received to show he knowingly violated the law, was

inappropriate because it is not necessary for the government to show a "knowing violation" of law in a § 1326(a) prosecution.[2] *See United States v. Miranda-Enriquez*, 842 F.2d 1211, 1212 (10th Cir. 1988). Yet he concedes the evidence was relevant to show he (1) intentionally entered the United States and (2) he is an alien—two elements the jury was instructed to find in order to convict under § 1326(a).[3] He also concedes the propriety of those purposes under Rule 404(b). That said, we perceive his focus to be on the third part of the Rule 404(b) inquiry—whether the probative value of the evidence

---

[2] It is necessary to get the language right. The government must prove the defendant was intentionally in the United States (as opposed to, for instance, being here mistakenly or for some other innocent reason). *See supra* n.3. But it does not have to prove he knowingly violated the law. It can be a bit tricky. The district judge admitted the evidence, saying:

> I think [the government is] right . . . . This is not prejudicial in the sense of what the law says is prejudicial. This is evidence that goes to show that he knowingly violated the law and that he had more than ample knowledge of that at the time that he did.

(R. Vol. III at 16.) The judge may have erred or he may have merely misspoke. It is hard to tell.

[3] The jury was instructed that before Yanez-Rodriguez could be convicted of violating 8 U.S.C. § 1326(a), it had to find beyond a reasonable doubt, *inter alia*, that he "knowingly entered or was found in the United States." (R. Vol. IV at 59, 398.) But Yanez-Rodriguez was charged with being "found in the United States" (R. Vol. I at 7), one of the ways a deported alien may violate § 1326(a). *United States v. Sierra-Ledesma*, 645 F.3d 1213, 1218 (10th Cir. 2011) ("[A] deported alien may violate [§]1326(a) in three ways: he may (1) illegally reenter the United States, (2) attempt to illegally reenter the United States, or (3) be later found at any time in the United States."). When a defendant is charged with being "found in" the United States, the government need only show he "reentered the United States with the intent to do so." *Id.* at 1223. Yanez-Rodriguez does not raise the issue, probably because he benefitted from it. Nor does the government complain about being held to a higher burden of proof than necessary. Apparently it sees no reason to quarrel with a guilty verdict.

about his prior removals and reentries was substantially outweighed by the potential for unfair prejudice under Rule 403.

The issue is a close one. The probative value of the prior removals and reentries was substantial. Yanez-Rodriguez did not contest his initial removal in 2005, which was based on a Notice to Appear alleging he was not a citizen of the United States, but of Mexico, and he was in the United States without permission. When he was found in October 2006, he again told immigration officials that he was a citizen of Mexico and not the United States. He also admitted to having been removed from the United States in November 2005 and told officials that he (1) had reentered the next day, (2) had no fear of returning to Mexico, and (3) his mother was in the process of obtaining "her papers and then filing for me." (R. Vol. I at 107.) When he was again found in the United States in October 2007 (after the 2005 order of removal was reinstated in October 2006), he again told immigration officials he was a Mexican citizen and admitted that he (1) had been previously removed in November 2005 and October 2006, (2) had not received permission to reenter the United States although he had applied for a visa in 1989 or 1990, (3) did not have family in Mexico, and (4) did not "fear torture from the Mexican government." (R. Vol. I at 113.) This evidence demonstrates he is an alien and he had no permission to be in the United States. Moreover, his admissions about his prior removals and reentries are clearly probative to whether his most recent reentry was intentional, as opposed to being accidental or resulting from some other innocent cause.

On the other hand, the potential for unfair prejudice was great. The prior removals and reentries demonstrated Yanez-Rodriguez's propensity to ignore the immigration laws of the United States. Furthermore, he did not contest his alienage or that he intentionally entered the United States. "[W]hen an issue is not seriously disputed, there is little justification for admitting evidence that risks unfair prejudice." *See United States v. Trent*, 767 F.3d 1046, 1050 (10th Cir. 2014). Even though it was twice told not to do so, the risk of the jury using the evidence improperly was heightened by the government's reference to him in its opening statement as a "habitual trespasser into the United States . . . [who] won't stay away when he's ordered to or told to."[4] (R. Vol. IV at 62.)

The district judge may have erred in concluding the probative value of the evidence was not substantially outweighed by its potential for unfair prejudice under Rule 403.[5] But even assuming error for purposes of this appeal, the government argues it was harmless and we agree. "An error is considered

---

[4] However, because Yanez-Rodriguez did not dispute at trial that he illegally reentered the United States after being removed in December 2009, the jury already knew he was a trespasser. The fact he had previous removals and reentries, therefore, "cast[] him in only a marginally worse light than the one that otherwise would have shone upon him." *See United States v. Brooks*, 736 F.3d 921, 941 (10th Cir. 2013).

[5] The district judge did not perform an explicit Rule 403 balancing analysis. Yet, he heard the parties' arguments concerning the matter and did conclude the evidence was "not prejudicial in the sense of what the law says is prejudicial." (R. Vol. III at 16.) We take this as an implicit Rule 403 decision. *See United States v. Lazcano–Villalobos,* 175 F.3d 838, 847 (10th Cir. 1999) ("Although explicit findings are clearly preferable, under the facts of this case we conclude the district court must have implicitly made a Rule 403 finding when it contemplated [the defendant's] unfair prejudice and probative value argument.").

harmless unless it had a substantial influence on the outcome of the trial or leaves one in grave doubt as to whether it had such effect." *United States v. Caldwell*, 589 F.3d 1323, 1334 (10th Cir. 2009) (quotations omitted). "When the evidence against a defendant is overwhelming, an erroneous admission of prior [crimes] is harmless—especially when the trial court issues a proper limiting instruction." *Id.*

Without regard to the evidence about Yanez-Rodriguez's prior removals and reentries there can be no doubt: he was found in the United States in May 2014 after having been previously removed in December 2009. The clearly admissible evidence of his guilt was overwhelming.

An immigration agent described the circumstances surrounding Yanez-Rodriguez being found in the United States in May 2014. Another agent, who processed him after he was found, testified to his admission of being a citizen of Mexico and not being a lawful permanent resident of the United States "but [having] applied." (R. Vol. 1 at 125.) According to the testimony, he also told the agent he had entered the United States two to three years prior without inspection and without permission to reenter, and had previously been deported in December 2009. Yet another agent testified he transported Yanez-Rodriguez to the border in December 2009 and witnessed him being removed to Mexico. The December 2009 warrant of removal was also introduced, showing where, when, and how he was removed. Finally, the jury heard evidence that a review of Yanez-Rodriguez's alien file revealed there was no record of him applying to become a United States citizen or a lawful permanent resident or any record suggesting his presence in the United States in May 2014 was lawful. *See United States v. Luna-Bolanos*, 369 F. App'x

947, 948-49 (10th Cir. 2010) (unpublished) (evidence was sufficient to show defendant had not obtained permission to reenter the United States where, *inter alia*, there was no record he had applied for or received permission to reenter the United States). Moreover, Yanez-Rodriguez did not contest that he is an alien and intentionally entered the United States. Finally, the judge instructed the jury not to use the evidence of his prior acts as evidence of guilt.[6] We see no reversible error.[7]

---

[6] Throughout his brief, Yanez-Rodriguez also claims it was error for the district judge to admit evidence surrounding his 2008 guilty plea to illegal reentry of a removed alien to show he knowingly violated the law. Clarification is required—the judge did not admit evidence of the conviction, only the statements Yanez-Rodriguez made when pleading guilty, i.e., that he is an alien and he reentered the United States without first obtaining permission to do so. Moreover, while the judge said he was admitting these statements to show Yanez-Rodriguez knew the elements of the offense, it is clear from the record the judge allowed them as admissions and not hearsay under Fed. R. Evid. 801(d). However, because "they reveal or suggest *prior* criminal conduct [that in 2008 he was an alien and had reentered the United States without first obtaining permission] they must nevertheless . . . be analyzed for admissibility under Rule 404(b)." *See United States v. Oberle*, 136 F.3d 1414, 1418 (10th Cir. 1998) (emphasis added). And Yanez-Rodriguez agrees his admissions to illegal reentry of a removed alien had a proper purpose. So his argument again comes down to Rule 403. And, as discussed, any error was harmless.

[7] While any error in admitting the evidence was harmless in this case, the more prudent course might have been to defer admission under Fed. R. Evid. 611 until after the government and the defense had rested, especially where it is not "clear at the outset whether such proof is needed, either because abundant other evidence is to come in or because the point is not contested . . . . Such delays are sometimes useful and may solve problems that could otherwise become much larger." *See* CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, FEDERAL EVIDENCE, § 4:30 (4th ed. 2013). Here, evidence implied Yanez-Rodriguez, through the good offices of his mother, was seeking permission to be in the United States. But it came through the testimony of government witnesses. While irrelevant in this case, had it arisen during the defendant's case-in-chief, the Rule 404(b) dynamics may well have been different. But for the government's aggressiveness, the Rule 404(b) matter may never have arisen.

**AFFIRMED.**

Entered by the Court:

**Terrence L. O'Brien**
United States Circuit Judge