**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 22, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

DEANDRE ANTONIO HOPKINS,
a/k/a Wet, a/k/a C-Wet, a/k/a Sman,

Defendant – Appellant.

No. 13-5072
(D.C. No. 4:12-CR-00050-JHP-3)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **PHILLIPS**, and **McHUGH**, Circuit Judges.

Deandre Hopkins was indicted, tried, and convicted of conspiring to rob banks, credit unions, and pharmacies in Tulsa, Oklahoma. The district court denied Deandre's motion for judgment of acquittal, finding that the evidence at trial established the conspiracy as charged. Deandre appeals. We hold that there was a variance between the conspiracy charged and the evidence presented at trial, but we hold that it was not substantially prejudicial. We therefore affirm the district court.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, claim preclusion, and issue preclusion. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

Deandre also raises three other issues. He appeals the denial of his motion in limine to exclude gang-affiliation evidence. He also argues that his conviction for the conspiracy violates the Double Jeopardy Clause. We affirm the district court on these two issues. Finally, he argues that there has been cumulative error. We hold there are insufficient errors to conduct a cumulative error analysis. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm Deandre's convictions on all counts.

## I. FACTS AND PROCEDURAL HISTORY

Following a series of robberies in Tulsa, the local police began to suspect that the robberies were connected. They developed a list of suspects, which included Deandre. The police were interested specifically in seven robberies that took place from August 2009 to November 2011: (1) IBC Bank; (2) Dooley's Pharmacy; (3) T. Roy Barnes Pharmacy ("Barnes Pharmacy"); (4) Metro Pharmacy and Medical Supplies ("Metro Pharmacy"); (5) CVS Pharmacy; (6) Tulsa Municipal Employees Federal Credit Union ("Tulsa Credit Union"); and (7) Arvest Bank. They came to believe that these robberies had been committed as part of a larger conspiracy by members of the Hoover Crips, a Tulsa street gang.

Based on this investigation, a federal grand jury returned a ten-count indictment against a group of eight coconspirators,[1] charging that the group had conspired together to commit six of the seven robberies in violation of 18 U.S.C. § 1951(a).[2] Deandre was indicted as a member of this conspiracy. Deandre was also charged with committing two of the robberies—Metro Pharmacy and Tulsa Credit Union—and for aiding and abetting the use of a firearm during and in relation to each of the two robberies (crimes of violence) under 18 U.S.C. § 924(c)(1)(A)(ii).[3] Deandre had already been tried and convicted in federal court

---

[1] The indictment named eight defendants: Vernon Hill, Christopher Lewis, Deandre Hopkins, Marquis Devers, Dontayne Tiger, James Miller, Kenneth Hopkins, and Dejuan Hill. Throughout this opinion, we will refer to Vernon, Dejuan, and Deandre by their first names because there were other coconspirators indicted with the same last names. Deandre, Vernon, and Dejuan were the only defendants who proceeded to trial. All of the other indicted coconspirators pleaded guilty before trial. Vernon, Dejuan, and Deandre were convicted of all charges. Vernon appeals his conviction in a related appeal. *United States v. Vernon Hill*, __ F. App'x __, No. 13-5084 (10th Cir. May 22, 2015) (unpublished). Dejuan Hill does as well. *United States v. Dejuan Hill*, __ F.3d __, No. 13-5074 (10th Cir. May 22, 2015).

[2] The CVS Pharmacy robbery was not charged against any of the coconspirators, nor was it listed as an overt act for Count One. Instead, the government used this evidence against Vernon in an attempt to tie him to the other robberies.

[3] In more complete part for the Metro Pharmacy robbery: "[T]he defendants, aiding and abetting each other, knowingly used, carried and brandished firearms during and in relation to a crime of violence . . . ." Also, in more complete part for the Tulsa Credit Union robbery: "[T]he defendants, and others known to the Grand Jury, aiding and abetting each other, knowingly used, carried, brandished

for the underlying substantive offense of robbing the Barnes Pharmacy. The government used the Barnes Pharmacy robbery as an overt act for the Count One conspiracy charge. On appeal to this court for the Barnes Pharmacy robbery charge (not the conspiracy charge), we affirmed his robbery conviction. *United States v. Hopkins*, 528 F. App'x 782, 782–84 (10th Cir. 2013) (unpublished).

## A. Barnes Pharmacy

In May 2010, four armed men wearing hoodies, cut-off shirtsleeves wrapped around their faces, and gloves robbed the Barnes Pharmacy. The robbers arrived in a stolen car, took drugs and cash, and stole the pharmacist's car for the getaway. The car was later found abandoned nearby, with a bag containing the face coverings. Deandre's DNA was on one of the face coverings left in the car. A jury convicted Deandre of this robbery, and we affirmed his conviction on appeal. *Hopkins*, 528 F. App'x at 782–84.

## B.    Metro Pharmacy

This robbery occurred in August 2011. Duncan Herron, the government's cooperating witness, who had been a part of the larger conspiracy at one time but had made a deal with the government, testified at trial to having participated in

and discharged firearms during and in relation to a crime of violence . . . ."

the Metro Pharmacy robbery, and he named Christopher Lewis, Marquis Devers, and Vernon Hill as coconspirators. He also later named Dontayne Tiger and Deandre as coconspirators.

Herron admitted to meeting with the group to plan the Metro Pharmacy robbery on August 13, 2011. Later that day, the group carried out its plan. Herron walked into the pharmacy to buy some medicine, texted Devers as he was leaving, and held open the door for Lewis and Devers (because customers had to be buzzed into the pharmacy). Deandre had given Herron $10 to buy the medicine. Lewis, Vernon, and Devers then robbed the pharmacy with guns. Herron testified that both Tiger and Deandre were lookouts during the Metro Pharmacy robbery.[4] After the robbery, the men got into a van that was parked outside of the pharmacy and drove away. As instructed by Tiger, Herron called 911 to report the robbery after the other men drove away, attempting to divert police attention from his involvement.

Included within the evidence admitted at trial were cell phone records establishing that Devers had called Metro Pharmacy twice before the robbery,

---

[4] Deandre disputes the credibility of this testimony because Herron had not named Deandre as a participant at first, but he later changed his account of the Metro Pharmacy to include Deandre. On appeal, we take the evidence in the light most favorable to the government, and we do not weigh the credibility of witnesses. *United States v. Hamilton*, 587 F.3d 1199, 1206 (10th Cir. 2009).

that Devers and Herron had communicated by text message during the robbery, and that Lewis and Vernon communicated by cell phone during the robbery.

## C.    Tulsa Credit Union

In September 2011, a group of assailants robbed the Tulsa Credit Union. Herron testified at trial that he, Tiger, Deandre, Lewis, James Miller, and Devers participated in this robbery. Devers and Deandre picked up Herron and drove to an apartment to plan the robbery, where the others were already waiting. After this meeting, Herron, Devers, Miller, and Deandre drove to an apartment complex, where they stole a Jeep to use in the robbery. Deandre and Tiger then drove the group to the bank in separate cars. Miller, Devers, and Lewis robbed the bank, wearing hoodies, face coverings, and gloves, and carrying guns. One of them fired a gun. The robbers demanded money from multiple tellers, and one teller gave them $170,000 from the vault. Witnesses saw the robbers drive away in the stolen Jeep. Lewis, Devers, and Miller got into the Jeep parked outside the credit union, and Herron drove the stolen Jeep around the corner. Once around the corner, Herron, Miller, and Devers got into a car with Deandre. Lewis got into a separate car with Tiger. They left the Jeep there and all drove to Miller's sister's house, and police recovered the Jeep later that day. The group, including

Deandre, then divided the money between themselves. Herron received $7,000 for his role in the robbery.

## D. The Larger Conspiracy

The government's theory of the case at trial was that all eight individuals indicted had conspired, generally, to commit bank, credit union, and pharmacy robberies in Tulsa. Most of the evidence establishing this larger conspiracy centered on each coconspirator's relationship with the Hoover Crips. The government also highlighted the similarities between the robberies. Apart from the three robberies in which Deandre was involved, the government elicited testimony about four other robberies—IBC Bank, Dooley's Pharmacy, CVS Pharmacy, and Arvest Bank—but there was no evidence linking Deandre to any of those robberies. Because Deandre's trial included the global conspiracy charge and was joined with Vernon's and Dejuan Hill's, his trial included evidence regarding these four robberies. But he was not indicted, charged, or convicted for committing any of them.

## E. Procedural History

After the government rested its case, Deandre moved for a Rule 29 judgment of acquittal on Count One, the conspiracy charge, arguing that the government had failed to prove interdependence. The district court denied the motion.

The jury convicted Deandre on all five charges against him. On appeal, Deandre raises four issues. First, he argues that there was insufficient evidence of interdependence to support his conviction for the global conspiracy. As part of this issue, he argues that there was a substantially prejudicial variance between the indictment and what the government proved at trial. Second, Deandre appeals the denial of his motion to exclude the gang evidence under Fed. R. Evid. 403. Third, he argues that because he had already been convicted for the Barnes Pharmacy robbery, his later conviction for conspiring to commit that same robbery violated the Double Jeopardy Clause. Fourth, he argues that there was cumulative error.

## II. VARIANCE

To prove a conspiracy, the government must show: (1) that two or more persons agreed to violate the law; (2) that the defendant knew at least the essential objectives of the conspiracy; (3) that the defendant knowingly and voluntarily became a part of the conspiracy; and (4) that the alleged coconspirators were interdependent. *United States v. Sells*, 477 F.3d 1226, 1235

(10th Cir. 2007). Deandre disputes only whether the government introduced enough evidence to establish the fourth element, interdependence—and more importantly, whether the government's failure to introduce sufficient evidence constitutes a fatal variance.[5]

We treat a conspiracy variance claim as an attack on the sufficiency of the evidence supporting the jury's finding that each defendant was a member of the same conspiracy. *United States v. Carnagie*, 533 F.3d 1231, 1237 (10th Cir. 2008) (citing *United States v. Griffin*, 493 F.3d 856, 862 (7th Cir. 2007)). We review challenges to the sufficiency of the evidence de novo. *United States v. Wells*, 739 F.3d 511, 525 (10th Cir. 2014). We must take the evidence and draw all reasonable inferences in favor of the government. *Id.* "Distinguishing between a single, large conspiracy and several smaller conspiracies is often difficult; we will generally defer to the jury's determination of the matter." *United States v. Caldwell*, 589 F.3d 1323, 1329 (10th Cir. 2009). We review de novo the existence of a variance that would support acquittal as a matter of law. *Id.* at 1328.

---

[5] In his Brief, Deandre discusses whether he could be found guilty of aiding and abetting the robberies, rather than conspiring to commit the robberies. The government argues that Deandre did not raise this argument to the district court, nor did he challenge the sufficiency of the evidence as to his § 924(c) convictions. In his Reply Brief, Deandre admits that he only discusses aiding and abetting as a rhetorical device to challenge interdependence. We conclude that the issue of aiding and abetting is not properly before this court and thus do not consider it. For the same reasons, we do not consider the sufficiency of the evidence for his § 924(c) convictions.

Interdependence is the focal point for determining whether a single conspiracy existed. *Id.* at 1329. "Interdependence exists where co-conspirators 'inten[d] to act together for their shared mutual benefit within the scope of the conspiracy charged.'" *Id.* (alteration in original) (quoting *United States v. Evans*, 970 F.2d 663, 671 (10th Cir. 1992)). This requires that "each [coconspirator's] activities 'constituted essential and integral steps toward the realization of a common, illicit goal.'" *United States v. Edwards*, 69 F.3d 419, 431 (10th Cir. 1995) (quoting *United States v. Fox*, 902 F.2d 1508, 1514 (10th Cir. 1990)). Interdependence is often proved by circumstantial evidence, *United States v. Hutchinson*, 573 F.3d 1011, 1035 (10th Cir. 2009), and it does not require proof that the conspirators know the identities or details of each scheme or have connections with all other members of the conspiracy, *United States v. Foy*, 641 F.3d 455, 465 (10th Cir. 2011) (reviewing a sufficiency challenge for plain error).

"A variance arises when an indictment charges a single conspiracy but the evidence presented at trial proves only the existence of multiple conspiracies." *Carnagie*, 533 F.3d at 1237 (citing *United States v. Ailsworth*, 138 F.3d 843, 848 (10th Cir. 1998)). This constitutes reversible error only if it is prejudicial and affects the defendant's substantial rights.[6] *Edwards*, 69 F.3d at 433; *Caldwell*,

---

[6] In his Brief, Deandre argues that "a defendant is prejudiced if the Government convicts him of one general conspiracy when, in fact, the evidence

- 10 -

589 F.3d at 1333. We explained in *United States v. Windrix* that "[a] defendant's substantial rights are not prejudiced merely because the defendant is convicted upon evidence which tends to show a narrower scheme than that contained in the indictment, provided that the narrower scheme is fully included within the indictment." 405 F.3d 1146, 1154 (10th Cir. 2005) (*quoting United States v. Harrison*, 942 F.2d 751, 758 (10th Cir. 1991)) (internal quotation marks omitted).

Prejudice can occur in a number of ways. First, it can arise when the defendant did not have sufficient notice of the charges. *Id.*; *see also Carnagie*, 533 F.3d at 1241 (citing *United States v. Stoner*, 98 F.3d 527, 536 (10th Cir. 1996)). "When an indictment charges a conspiracy among multiple individuals, it generally provides sufficient notice to a defendant that she must defend against the smaller conspiracies." *Caldwell*, 589 F.3d at 1333. Second, "[a] defendant's substantial rights are affected in the context of a variance when the jury determines a defendant's guilt by relying on evidence adduced against coconspirators who were involved in separate conspiracies." *Edwards*, 69 F.3d at 433. To evaluate whether a prejudicial guilt-spillover effect such as this occurred, reviewing courts look to three factors: (1) whether the separate conspiracies affected the jury's

proves that there were several smaller conspiracies." Appellant's Br. at 19–20 (citing *United States v. Kotteakos*, 328 U.S. 750 (1946)). Deandre's characterization of *Kotteakos* is incorrect. In *Kotteakos*, the Supreme Court required that the defendant show some prejudice *beyond just the fact* that the evidence only established smaller conspiracies. 328 U.S. at 773–74.

ability to evaluate each defendant's individual actions; (2) whether the variance caused the jury to misuse evidence; and (3) the strength of the evidence underlying the conviction. *Carnagie*, 533 F.3d at 1241.

Deandre argues that the government failed to prove interdependence for a global conspiracy to commit robberies in Tulsa. Instead, he argues, the evidence established only several, smaller conspiracies to commit specific robberies, resulting in a variance between the indictment and what the government proved at trial. He further argues that he was prejudiced by a substantial guilt-spillover effect when the government associated him with crimes for which it did not prove his direct involvement.

The government argues that no variance between the conspiracy charged and the evidence adduced at trial occurred and that even if a variance occurred it was not prejudicial. The government's theory at trial was that Deandre and his coconspirators were members or affiliates of the Hoover Crips and that, through this association, they conspired to commit the six robberies listed as overt acts in Count One.

We agree with Deandre that the record shows insufficient evidence of a common unlawful goal or purpose to prove the global conspiracy. *See United States v. Daily*, 921 F.2d 994, 1007 (10th Cir. 1990) ("[T]he focal point of the [interdependence] analysis is whether the alleged co-conspirators were united in a

common unlawful goal or purpose."), *overruled on other grounds by United States v. Gaudin*, 515 U.S. 506 (1995). As we explained in *Carnagie*, "[t]his common goal, however, is not by itself enough to establish interdependence: [w]hat is required is a *shared*, single criminal objective, not just similar or parallel objectives between similarly situated people." 533 F.3d at 1239 (emphasis in original) (internal quotation marks omitted) (quoting *Evans*, 970 F.2d at 671). So even though the general objective of the individual robberies was to rob businesses of money or drugs, that does not necessarily mean that the separate groups were interdependent. *See id.*

After reviewing the record, we conclude that there is insufficient evidence of one common global conspiracy; instead, we see evidence of smaller, individual conspiracies. To begin, not all of the robberies were committed by the same men. While this does not foreclose the possibility that there was a global conspiracy, we find it important to note that a different group of men robbed each bank, albeit with some overlap among the groups. Further, the government introduced no evidence that proceeds from any individual robbery were ever shared with anyone not directly participating in that robbery. Additionally, the government did not establish that one person directed all of the conspirators, which would have allowed the jury to infer that he was calling the shots. To the contrary, the jury was left to infer that because all of the conspirators were members or affiliates of

the Hoover Crips, they must have had a shared criminal goal sufficient to establish interdependence. We think, as a matter of law, that this is insufficient.

In *United States v. Robinson*, 978 F.2d 1554, 1563 (10th Cir. 1992), we explained that while gang affiliation evidence can be probative circumstantial evidence of agreement, purpose, and knowledge for a conspiracy, gang-affiliation evidence "alone could not support a conviction." In that case, unlike here, other evidence beyond gang membership helped establish the conspiracy. *See id.* For the conspirators in this case, we see no evidence, other than gang membership, that shows or even provides an inference of a shared criminal goal to commit the global conspiracy.

The government asserts that the commonalities between the robberies should be enough. We disagree. While commonalities might be sufficient if the means and method were unique in some way, that was not the case here. *Cf., e.g.*, *United States v. Carroll*, 207 F.3d 465, 469 (8th Cir. 2000) (applying Fed. R. Evid. 404(b) to determine whether the characteristics shared by two robberies were similar enough to form a *modus operandi* and concluding that wearing a nylon mask, carrying a gun, vaulting over the counter, and putting money in a bag were not sufficiently unique). The use of masks, guns, bags, threats, and getaway cars does not elevate this string of robberies to one where we can infer that the same group orchestrated or carried them out. The government tried to rely on the gang-

affiliation evidence to link all of these facts together and paint a picture of a gang-based robbery conspiracy. It also cited the discharge of firearms and the demand of money and controlled substances during the robberies in an attempt to prove interdependence. To us, this manner of committing these robberies seems common, not unique.

Even further, no evidence showed that the individual robberies "benefitted from or depended upon the success of the" other robberies. *See Carnagie*, 533 F.3d at 1240 (citing *United States v. Yehling*, 456 F.3d 1236, 1241 (10th Cir. 2006) ("[E]ach coconspirator's 'actions must facilitate the endeavors of other alleged coconspirators or facilitate the venture as a whole.'" (quoting *Evans*, 970 F.2d at 670))). In fact, each individual robbery may well have harmed—not benefitted—the charged coconspirators not participating in a particular robbery. After each robbery, police became more alert to future related robberies and concentrated on the involvement of individual Hoover Crips.

Therefore, we conclude that there was insufficient evidence of interdependence introduced at trial to prove a global conspiracy on the scale charged by the government. While the government failed to prove the global conspiracy charged in the indictment, our inquiry is not complete. We must still consider whether the trial evidence established several smaller conspiracies to commit the individual, charged robberies. *See, e.g.*, *Caldwell*, 589 F.3d at

1332–33. We conclude that the government introduced sufficient evidence at trial to show that Deandre, with others, conspired to rob the Barnes Pharmacy, the Metro Pharmacy, and the Tulsa Credit Union. Deandre all but concedes this on appeal.[7] *See* Appellant's Br. at 12 ("[T]he single conspiracy alleged in the indictment was not borne out by the trial evidence, which showed not a rigid conspiracy, but rather (at most) a string of smaller conspiracies centered around the robberies. This was a fatal variance between the allegations and the trial evidence which warrants reversal.").

Had Count One of the indictment charged Deandre with conspiring separately to commit his three robberies, we could affirm those conspiracy convictions because Deandre does not challenge the sufficiency of the evidence for the smaller conspiracies. But when the government instead chose to charge Deandre with conspiring to commit the global conspiracy and failed to prove that global

---

[7] Even if Deandre did not concede this point on appeal, we think that the evidence establishing the Barnes Pharmacy, Metro Pharmacy, and Tulsa Credit Union robberies was sufficient to prove three individual conspiracies. For the Barnes Pharmacy robbery, four men robbed the bank, arriving in a stolen car, and Deandre's DNA was found on one of the face coverings recovered from the abandoned car. For the Metro Pharmacy robbery, Duncan Herron testified that Deandre had helped plan the robbery, supplied Herron with money to be buzzed into the pharmacy, acted as a lookout during the robbery, and was a getaway driver. Finally, for the Tulsa Credit Union robbery, Herron testified that Deandre helped steal a car for the robbery, drove the coconspirators to the credit union, and acted as a getaway driver. We think that all three robberies have sufficient evidence to establish three conspiracies.

conspiracy at trial, it caused a variance. We must determine whether this variance requires us to vacate Deandre's conviction for Count One. As we discussed above, prejudice can occur in two ways: first, it can arise when the defendant did not have sufficient notice of the smaller conspiracies; second, a defendant can suffer a prejudicial guilt-spillover effect.

For the first type of prejudice, we conclude that the indictment adequately notified Deandre that he had to defend against the smaller conspiracies proved at trial. *See, e.g.*, *Caldwell*, 589 F.3d at 1333 (concluding that when an indictment charges a conspiracy among multiple people, the indictment generally provides sufficient notice to a defendant that he must defend against the smaller conspiracies). The indictment fully contemplated the smaller conspiracies. The conspiracy charged in the indictment recited the charged robberies as overt acts. *See, e.g.*, *Carnagie*, 533 F.3d at 1241 (finding no prejudice because the defendants knew that the smaller conspiracies were "part and parcel" of the overall conspiracies charged) (quoting *Ailsworth*, 138 F.3d at 850). Based on the indictment charges, Deandre was accused of participating in three robberies. The indictment notified him of the importance of his membership in the Hoover Crips. Because Deandre could anticipate the trial evidence, he cannot reasonably contend that he was insufficiently notified of the charges against him. *Id.*

For the second type of prejudice, we conclude that there was no prejudicial

guilt-spillover in this case. We apply the three factors discussed in *Carnagie*:

> *First*, whether the proliferation of separate crimes or conspiracies
> presented in the case impaired the jury's ability to segregate each
> individual [conspirator's] actions and the evidence associated with
> [her or] his participation;
>
> *Second*, whether confusion among members of the jury concerning the
> legal limitations on the use of certain evidence resulted from the
> variance; and,
>
> *Third*, the strength or weakness of the evidence underlying the jury's
> conviction.

533 F.3d at 1241 (alterations in original) (quoting *Harrison*, 942 F.2d at 758).


### A. The Evidence of Separate Conspiracies
### Did Not Impair the Jury's Deliberation

We conclude that the jury could segregate each charged defendant's actions.

We are aware that, as the Supreme Court explained in *United States v. Kotteakos*,

the risk of prejudice increases when there are more defendants tried and

conspiracies proved. 328 U.S. 750, 766–67 (1946). In that case, more than 30

people were indicted, 19 were tried together initially, 13 went to the jury, and at

least eight separate conspiracies were proved. *Id.* The Court announced no fixed

rule for prejudice based on the numbers. *See generally id.* Instead, in measuring

substantial prejudice, courts must look to the facts of each case. *See generally*

*Carnagie*, 533 F.3d at 1242 (concluding that trying three defendants together for

- 18 -

three separate conspiracies, given other factors, did not constitute prejudice). Here, the government tried three defendants together and proved five conspiracies.[8] As in *Carnagie*, "the number of defendants tried and conspiracies proven do not reach the magnitude of *Kotteakos*, and thus the risk of prejudice is not as great." *Id.*

## B. Evidentiary Spillover

For two reasons, Deandre claims that evidentiary spillover prejudiced him: (1) "[T]he effect [of 'guilt transference'] was pronounced for [Deandre] because of the Government's use of gang evidence to taint all conspirators"; and (2) he was exposed to a general risk of guilt transference from the evidence presented against other conspirators from the other robberies.

We are unpersuaded by his first argument. As we explain later, we conclude that the gang-affiliation evidence was properly admitted against Deandre. Even had Deandre been tried only for conspiring to commit the three smaller robberies, the gang evidence would still have been probative of his and his coconspirators' purpose, knowledge, and intent in committing the three robberies. As to his second argument, the evidence demonstrated five separate conspiracies, each to

---

[8] We do not include the IBC Bank robbery because we concluded in Vernon's appeal that there was insufficient evidence to establish a conspiracy to rob that bank. *Hill*, __ F. App'x __, No. 13-5084. We also do not include the CVS Pharmacy robbery because that robbery was not even charged in the indictment.

commit a separate robbery. As in *Carnagie*, the evidence here was not so intricate that it rendered the jury unable to segregate each defendant's individual actions. *See* 533 F.3d at 1242. Also, the evidence from the other robberies was "of the exact same character" as the evidence from the three robberies involving Deandre. *See id.* at 1242–43. "We have held that such a similarity between different transactions cuts against a finding of substantial prejudice." *Id.*

### C. Strength or Weakness of Evidence Underlying Conviction

Finally, we must consider the strength or weakness of the evidence underlying the jury's conviction on Count One, meaning whether the evidence supported Deandre's conviction of the "smaller, separate conspiracies." *See Carnagie*, 533 F.3d at 1243. As explained earlier, Deandre conceded on appeal that there was sufficient evidence to prove the smaller, separate conspiracies. We conclude that the government's trial evidence was strong in proving that Deandre conspired to rob and robbed the Barnes Pharmacy, the Metro Pharmacy, and the Tulsa Credit Union.

During the Barnes Pharmacy robbery, four armed men wearing hoodies, face coverings, and gloves robbed the pharmacy, taking drugs and cash. The robbers arrived in a stolen car, and stole the pharmacist's car for the getaway. The police found the car abandoned nearby, with a bag containing the face coverings.

Deandre's DNA was on one of the face coverings left in the pharmacist's car. This all is very strong evidence that Deandre conspired to rob and participated in the robbery.

During the Metro Pharmacy robbery, Herron testified about Deandre's role in the robbery, including Deandre's actions in: (1) meeting with the others to plan it; (2) giving Herron $10 to buy the medicine (which was necessary to get the robbers into the pharmacy); and (3) acting as a lookout during the robbery.

Finally, during the Tulsa Credit Union robbery, Herron testified that Deandre met with the group to help plan the robbery, helped steal a Jeep to use in the robbery, drove the group to the Tulsa Credit Union, acted as a getaway driver, and helped divide the proceeds.

In sum, there was sufficient evidence for the jury to find Deandre guilty of the three, smaller conspiracies. Deandre has failed to demonstrate that he suffered a substantially prejudicial variance. We affirm his conviction on Count One.

### III. GANG-AFFILIATION EVIDENCE

Under Fed. R. Evid. 403, a trial court may exclude "relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ." We review evidentiary determinations for an abuse of discretion. *United States v. MacKay*, 715 F.3d 807, 839 (10th Cir. 2013). "Our abuse of discretion

- 21 -

review affords the district court considerable discretion in performing the Rule 403 balancing test because district court judges have front-row seats during trial and extensive experience ruling on evidentiary issues." *United States v. Archuleta*, 737 F.3d 1287, 1292 (10th Cir. 2013) (quoting *MacKay*, 715 F.3d at 839).

We have held that where conspiracy is charged, "gang-affiliation testimony may be relevant." *Id.* 1293–94 (citing multiple cases from this circuit allowing the admission of gang-affiliation evidence to help prove conspiracy). Specifically, we deem gang-affiliation evidence as probative and "directly relevant" to establishing some of the elements for a conspiracy—the agreement, purpose, and knowledge of coconspirators. *Robinson*, 978 F.2d at 1562. But gang-affiliation evidence alone cannot support a conviction. *Id.* at 1563.

The government introduced evidence that Deandre and the other coconspirators were members or affiliates of the Hoover Crips. The government relied on this evidence to establish interdependence for the global conspiracy. In this regard, Herron testified that Deandre was a member of the 39 sect of the Hoover Crips. Along the same line, Officer Steven Sanders testified that the department considered Deandre a certified gang member, relying on the Tulsa police department's system for "certifying" people as gang members.

Before trial, Deandre filed a motion in limine, seeking to prevent the government from introducing any evidence about his affiliation with the Hoover Crips. He argued that the government could not show with certainty that he was a gang member or that the robberies were sanctioned by the gang's leadership. He also argued under Fed. R. Evid. 403 that the danger of unfair prejudice from this evidence would substantially outweigh its probative value. The district court denied Deandre's motion, concluding that the gang-affiliation evidence was circumstantial evidence supporting the conspiracy charge. The court also concluded that the probative value of the evidence outweighed any danger of unfair prejudice.

On appeal, Deandre argues that the gang evidence caused "the negative aspects of the gang [to be] imputed to him."[9] Accordingly, he urges this court to reverse and remand for a new trial.[10] The government argues that the probative

---

[9] Deandre submits two cases from this court for the proposition that "mere gang membership, by itself, is not evidence of criminal activity." He cites *United States v. Roach*, 582 F.3d 1192, 1202 (10th Cir. 2009) (holding that the gang evidence was too stale to establish probable cause for a search warrant), and *Robinson*, 978 F.2d at 1563. Deandre's argument misses the point. Here, the government used the gang-affiliation evidence as circumstantial evidence that the conspirators agreed about the conspiracy's purpose and to show they knew about the conspiracy, not as evidence of independent criminal activity.

[10] The government contends that the motion in limine was narrower than Deandre contends on appeal. The government explains, "[I]n his motion in limine, [Deandre] specifically moved to prohibit the government from

value of the evidence was not substantially outweighed by the danger of unfair prejudice. Even if it was an abuse of discretion to admit the evidence, the government asserts that the error was harmless.

We conclude that the district court did not abuse its discretion. When the district court ruled on the motion in limine, the coconspirators were set for a joint trial based on the global conspiracy count. The probative value of the gang evidence for that count was considerable. We must remember that the three defendants at trial had disputed interdependence by arguing that not all coconspirators knew each other or had a joint motive. Therefore, the gang-affiliation evidence was circumstantial evidence opposing that argument. *See Robinson*, 978 F.2d at 1562–63 ("Circumstantial evidence is often the strongest evidence of conspiracy."). Even for the individual conspiracies that were actually established at trial, this evidence had probative value.

Additionally, the danger of unfair prejudice was limited, given that the gang-affiliation evidence was only a small part of the evidence linking Deandre to the

'introducing evidence at trial of any alleged affiliation of the Defendant, Deandre Hopkins, with the Hoover Crips street gang.'" On appeal, however, Deandre characterizes the scope of his motion more broadly, asserting that the motion sought "'to restrict the government from introducing gang evidence' altogether." To the extent the government is correct, this distinction may be relevant as it would compel us to review Deandre's claims for plain error rather than abuse of discretion. We need not resolve this dispute, however, because we conclude that all of the gang evidence was admissible even under the less deferential abuse of discretion standard.

individual conspiracies and robberies. There was other evidence, both direct and circumstantial, tending to show that Deandre was involved. For instance, the police found Deandre's DNA in the getaway car for the Barnes Pharmacy robbery. For the Metro Pharmacy robbery, Herron testified that Deandre helped plan the robbery, gave Herron money to use to get into the building, and acted as a lookout during the robbery. Herron also testified about Deandre's involvement in the Tulsa Credit Union robbery, explaining that Deandre was the getaway driver. The jury was not left to rely solely on Deandre's purported gang membership in determining whether he was a member of the conspiracy and had participated in the robberies.

Given the high degree of probative value and the limited danger of unfair prejudice, we conclude that the district court did not abuse its discretion under Rule 403 in admitting the evidence.

## IV. DOUBLE JEOPARDY

The Supreme Court has held that "a substantive crime and a conspiracy to commit that crime are not the 'same [offense]' for double jeopardy purposes." *United States v. Felix*, 503 U.S. 378, 389 (1992). A defendant can be tried and convicted for each without violating Double Jeopardy. *Id.*

Deandre argues that his previous prosecution and conviction for the Barnes Pharmacy robbery must bar his later prosecution in this case for conspiring to commit that robbery. He acknowledges on appeal that he raises this argument to preserve it for appeal to the Supreme Court. We agree with the government that *Felix* requires that this court hold that there was no Double Jeopardy violation. We conclude that Deandre's indictment and conviction for conspiracy did not violate Double Jeopardy.

## V. CUMULATIVE ERROR

When analyzing cumulative error, we aggregate all actual errors and consider whether their cumulative effect denied the defendant a fundamentally fair trial. *United States v. Rivera*, 900 F.2d 1462, 1477 (10th Cir. 1990) (en banc); *see also United States v. Toles*, 297 F.3d 959, 972 (10th Cir. 2002). We consider only actual errors, not just the possibility that the district court might have done something differently. *Rivera*, 900 F.2d at 1470–71. Errors are only those violations "of an established legal standard defining a particular error," not just incidents a reviewing court considers troubling. *Id.* at 1471. As its name suggests, there must be at least two errors in order to undertake a *cumulative* error analysis. *Id.* at 1469.

Deandre argues that he has proven three relevant errors: (1) lack of interdependence; (2) introduction of the gang-affiliation evidence; and (3) a Double Jeopardy violation. The government argues that Deandre cannot show any errors, let alone cumulative error.

We did not find any error regarding the gang-affiliation evidence or the Double Jeopardy claim. Because we concluded that there was a variance, we must include the variance in our consideration of cumulative error. But one error is insufficient to even warrant conducting a cumulative error analysis. We therefore hold that there was no cumulative error in this case.

## VI. CONCLUSION

We affirm Deandre's convictions as to all counts.

ENTERED FOR THE COURT


Gregory A. Phillips
Circuit Judge

No. 13-5072, *United States v DeAndre Hopkins*

**McHUGH**, Circuit Judge, concurring:

I am pleased to join in the majority's thorough and thoughtful Order and Judgment affirming Deandre's convictions. I write separately to explain why I conclude the variance in this case did not prejudice Deandre's right to a fair trial. As I described in my concurring and dissenting opinion in *United States v. [Dejuan] Hill*, __ F.3d __, No. 13-5074 (10th Cir. May 22, 2015) (McHugh, J. concurring and dissenting), the government's decision to charge and try the defendants for participating in a global conspiracy for which there was insufficient evidence carried with it the risk of prejudicial spillover. But in Deandre's case, the variance did not cause substantial prejudice. The government alleged Deandre participated in three of the seven robberies, including the Tulsa Credit Union robbery, which was the most violent of the seven.[11] As the majority explains, much of the gang evidence admitted was directly relevant to Deandre's involvement in all three robberies. And even if the global conspiracy theory allowed the government to introduce some inflammatory evidence that had little relevance to Deandre, the overwhelming evidence of Deandre's guilt with respect to the Barnes Pharmacy, Metro Pharmacy, and Tulsa Credit Union robberies makes it unlikely that the admission of this evidence improperly influenced the jury's verdict. Therefore, I concur in the majority's conclusion that the variance did not interfere with Deandre's right to a fair trial.

---

[11] The other two robberies were of the Barnes Pharmacy and the Metro Pharmacy.